712 A.2d 1207 (1998)
313 N.J. Super. 311
Edith PROSKE and Allan Proske, Plaintiffs-Appellants,
v.
ST. BARNABAS MEDICAL CENTER, H. Stephen Fletcher, M.D., Lester Kalisher, M.D., Garden State Business Forms, Inc., Route 80 Archives, and Allstate Business Archives, Defendants-Respondents, and
Imaging Consultants of Essex, P.A., Chilton Memorial Hospital, Mobile Service Unit, General & Vascular Surgical Group, P.A., John Kindzierski, M.D., and Albert De Dios, M.D., Defendants.
Superior Court of New Jersey, Appellate Division.
Argued June 10, 1998.
Decided June 23, 1998.
*1208 Peter E. Rhatican, Mendham, for plaintiffs-appellants (Mr. Rhatican, on the brief).
Paul J. Endler, Westfield, for defendant-respondent St. Barnabas Medical Center (Garrubbo and Romankow, attorneys; Mr. Endler, of counsel; Judith A. Millman, on the brief).
Mary Elizabeth Gazi, Cranford, for defendant-respondent Lester Kalisher, M.D. (Thomas B. Leyhane, attorney; Ms. Gazi, on the brief).
Gary L. Riveles for defendant-respondent H. Stephen Fletcher, M.D. (Dughi and Hewit, attorneys; Mr. Riveles and Jeffrey S. Chiesa, Cranford, on the brief).
Karl P. Kemm, North Brunswick, for defendant-respondent Garden State Business Forms, Inc. (Lynch, Martin, Philibosian, Chansky, Fitzgerald and Kane, attorneys; James D. Martin, of counsel; Mr. Kemm, on the brief).
Brian Peoples for defendants-respondents Route 80 Archives and Allstate Business Archives (Leary, Bride, Tinker and Moran, attorneys; Frank J. Kontely, III, on the brief).
Before Judges D'ANNUNZIO, A.A. RODRIGUEZ and COBURN.
The opinion of the court was delivered by COBURN, J.A.D.
Plaintiffs filed this action based on allegations of medical malpractice and negligent spoliation of evidence. The trial court granted defendants' motions for summary judgment. Plaintiffs appeal is limited to their claim of negligent spoliation of evidence.[1] We affirm.
The material facts, viewed most favorably for plaintiffs, indicate the following. On February 14, 1992, plaintiff Edith Proske underwent mammography at the Chilton Memorial Hospital Mobile Unit ("Chilton"). Dr. Albert De Dios read the mammogram for Chilton and sent a report to Edith's physician, Dr.
*1209 John Kindzierski, in which he said the following:
Please be advised that the recent mammography performed on [Edith] showed findings which are indeterminate. It is recommended that the patient have a physician-supervised mammography at Chilton Memorial Hospital in six months time to ascertain stability in the appearance of the area in question. The patient has been notified of these indeterminate findings and has been advised to call your office.
Dr. Kindzierski wrote a note on the report which said, "Had mobile mammo IndeterminateI have no idea what they meanHave her get films & see Dr. Fletcher for reviewexamHe is breast specialist."
On April 6, 1992, Edith, after having received the mammography films from Chilton, turned them over to defendant H. Stephen Fletcher, a surgeon to whom she had been sent by Dr. Kindzierski. Dr. Fletcher asked defendant Lester Kalisher, a radiologist in the St. Barnabas Department of Radiology, to review the films. Dr. Kalisher reviewed the films at defendant St. Barnabas Hospital on April 22, 1992. He indicated in his written report to Dr. Fletcher that there was no definitive evidence of malignancy. More specifically, he reported as follows:
COMMENT: Bilateral mammograms from Chilton Memorial Hospital, mobile mammography unit, is presented for interpretation. It is dated 2/14/92. A left and right mediolateral oblique and craniocaudal view are submitted for interpretation. There is fatty replacement with minimal fibroglandular tissue noted. No dominant mass or clustered microcalcifications are seen. Two small 5 mm. in diameter benign appearing nodules are seen, one in the supramedial and one in the supralateral aspect of the left breast. No clustered microcalcifications or architectural distortions are seen. A benign calcification is seen in the supramedial aspect of the right breast. Several small benign appearing calcifications are seen in the lateral aspect of the left breast. There appears to be slight unsharpness in the calcifications possibly due to technical reasons. Comparison with the old mammograms from St. Barnabas Medical Center dated 6/16/85 would be helpful. They were signed out by the patient on 8/27/85 and have not been returned. The skin, nipples and visualized axillae are normal.
CONCLUSIONS: FATTY REPLACEMENT WITH MINIMAL RESIDUAL PARENCHYMA. BENIGN APPEARING CALCIFICATIONS IN BOTH BREASTS. TWO 5 MM. BENIGN APPEARING NODULES IN THE LEFT BREAST WHICH PROBABLY REPRESENT SMALL RESIDUAL CYSTS, POSSIBLY APOCRINE CYSTS. ULTRASOUND WOULD NOT BE HELPFUL IN LESIONS OF THIS SIZE. COMPARISON WITH OLD FILMS WOULD BE HELPFUL.
Dr. Kalisher testified that in the normal course he would have returned the films to the St. Barnabas radiology department which would then have forwarded the films to either Chilton or Dr. Fletcher.
On July 28, 1993, another mammogram, taken at Overlook Hospital, revealed a poorly defined mass with calcifications suggestive of cancer. Dr. Fletcher reviewed this mammogram and on August 2, 1993, wrote to Dr. Kindzierski, stating the following:
[Edith] recently had a mammogram which showed what may be a poorly defined density in the left breast near the chest wall in an area that has some benign calcifications. This appears to be a new finding but this is difficult to tell since her last few mammograms have all been done at different centers. Her examination is negative. I showed the films to Lester Kalisher and he can't tell if this represents anything. At his suggestion the films will be repeated at SBMC. I'll let you know the results.
Dr. Kalisher acknowledges that he may have seen and briefly reviewed the July 28, 1993, mammography films, and that he may have recommended additional mammography "to obtain visualization in two projections." He recalled that this review took place in September 1993.
According to employees of St. Barnabas, a search for the February 14, 1992, films was *1210 conducted during the week of September 20, 1993. The films could not be located and a new file was created. It was also indicated by those employees that, contrary to Dr. Kalisher's assumption, the 1992 films would not have been sent to Chilton or Dr. Fletcher, but would have been permanently retained. On September 20, 1993, another mammography study was performed at St. Barnabas. After further procedures, plaintiff was diagnosed with cancer of the left breast on September 25, 1993.
In late 1993, St. Barnabas directed defendant Garden State Business Forms, Inc. ("Garden State"), to remove all 1992 films from St. Barnabas and store them at its facility. In 1994, St. Barnabas terminated its contract with Garden State, and the films it stored were turned over to defendant Route 80 Archives, also known as Allstate Business Archives. Neither of these companies had any record of having received films regarding Edith.
Dr. Fine, an oncologist retained by plaintiffs, testified that based on the tumor's size in September 1993, it probably was present in February 1992. However, without viewing the February 14, 1992, mammogram, he could not say with a reasonable degree of medical probability that it would have been detectable on that mammogram or that the failure to diagnose cancer at that time was negligence.
Defendants had no knowledge of the malpractice claim prior to service of the complaint, which was filed in August 1995.
In Allis-Chalmers Corp. v. Liberty Mut. Ins. Co., 305 N.J.Super. 550, 702 A.2d 1336 (App.Div.1997), we noted, "New Jersey Appellate Courts have not recognized the tort of negligent spoliation of evidence." Id. at 556, 702 A.2d 1336. Relying upon a recent Law Division case, Callahan v. Stanley Works, 306 N.J.Super. 488, 703 A.2d 1014 (Law Div. 1997), and various opinions from other states, the plaintiffs ask that we take this opportunity to establish this new theory of tort recovery in New Jersey.
Generally, a new cause of action should be created by legislative enactment or by the Supreme Court rather than by an intermediate appellate court. Passaic Township Bd. of Educ. v. Passaic Township Educ. Ass'n, 222 N.J.Super. 298, 303, 536 A.2d 1276 (App.Div.1987); Coyle v. Englander's, 199 N.J.Super. 212, 219-20, 488 A.2d 1083 (App. Div.1985); Namm v. Charles E. Frosst & Co., 178 N.J.Super. 19, 35, 427 A.2d 1121 (App.Div.1981).
In Coyle, supra, we observed:
In the absence of precedent, or at least clear direction by dictum from our Supreme Court, we conclude that failure to perform a contractual term alone does not create liability for damages for personal injuries, where no breach of any commonlaw duty is implicated in the slightest.... Development of policy is for the Supreme Court in this instance, as in most instances.

[199 N.J.Super. at 226, 488 A.2d 1083.]
In Boyd v. Travelers Ins. Co., 166 Ill.2d 188, 209 Ill.Dec. 727, 652 N.E.2d 267 (1995), the court noted that the majority of jurisdictions have not recognized negligent spoliation as an independent tort. Id. 652 N.E.2d at 269-70. In any case, under that theory the following elements must be proven: "(1) existence of a potential civil action, (2) a legal or contractual duty to preserve evidence which is relevant to the potential civil action, (3) destruction of that evidence, (4) significant impairment in the ability to prove the lawsuit, (5) a causal relationship between the evidence destruction and the inability to prove the lawsuit, and (6) damages." Continental Ins. Co. v. Herman, 576 So.2d 313, 315 (Fla.Dist.Ct.App.1990). In Viviano v. CBS, Inc., 251 N.J.Super. 113, 597 A.2d 543 (App.Div.1991), certif. denied, 127 N.J. 565, 606 A.2d 375 (1992), we described the tort in these terms:
Plaintiff's cause of action in the present case is analogous to a recently recognized cause of action for destruction of evidence which has been dubbed "spoliation of evidence." * * * The elements of that tort are: (1) pending or probable litigation involving the plaintiff; (2) knowledge on the part of the defendant that litigation exists or is probable; (3) willful or, possibly, negligent destruction of evidence by the defendant designed to disrupt the plaintiff's *1211 case; (4) disruption of the plaintiff's case; and (5) damages proximately caused by the defendant's acts.
[Id. at 125-26, 597 A.2d 543 (footnotes and citations omitted).]
In the instant case, plaintiffs have neither proven that prior to the loss of the evidence litigation was probable, nor that the defendants knew or even had reason to know that it was probable. Therefore, the first two elements of this new tort theory were not established. Thus, even if we accepted negligent spoliation of evidence as a theory, the trial court's dismissal of the complaint was still proper. With the admonition of Coyle, supra, against the creation of new torts by an intermediate appellate court in mind, we certainly should not engage in dictum supporting the introduction of this tort into our jurisprudence when the case can be resolved by noting that the elements have not been satisfied.
Plaintiffs also point to the decisions in two states, Illinois and Florida, endorsing a cause of action for spoliation of evidence against a hospital which lost a patient's records needed for a malpractice claim. Rodgers v. St. Mary's Hosp. of Decatur, 149 Ill.2d 302, 173 Ill.Dec. 642, 597 N.E.2d 616 (1992); Bondu v. Gurvich, 473 So.2d 1307 (Fla.Dist. Ct.App.1984). Those courts did not require proof of the first two elements described by the court in Viviano. Rather, liability was based solely on the defendant hospital's failure to abide by a statute requiring preservation of patients' records. Plaintiffs note that New Jersey also has a statute requiring preservation of patients' records by hospitals, N.J.S.A. 26:8-5, and they contend that therefore we, too, should create a tort for violation of that statutory duty. We decline to follow that course for three reasons.
First, the statute, N.J.S.A. 26:8-5,[2] does not expressly authorize a suit by an individual for loss of records. Therefore, it does "not create a statutory cause of action as that term is understood." Michaels v. Brookchester, Inc., 26 N.J. 379, 386, 140 A.2d 199 (1958).
Second, the violation of the statute did not have a causal relation to the physical injury suffered. In other words, the possible delay in discovering the cancer, thereby permitting a greater degree of invasiveness, was not a result of the loss of the mammogram. The loss bore only on the question of whether there had been malpractice. Up to this time, we have only relied on standards set forth in a statute as a basis for tort recovery when the failure to abide by the standard has caused injury, not when the failure has merely interfered with the possibility of proving a cause of action. Ibid.; see also Daniels v. Brunton, 7 N.J. 102, 107-08, 80 A.2d 547 (1951); Lambe v. Reardon, 69 N.J.Super. 57, 68, 173 A.2d 520 (App.Div.), certif. denied, 36 N.J. 138, 174 A.2d 924 (1961).
*1212 Third, based on Coyle, supra, 199 N.J.Super. at 219-20, 226, 488 A.2d 1083, we believe that creation of tort liability in these circumstances should not be done by an intermediate appellate court.
Affirmed.
NOTES
[1] In their notice of appeal, plaintiffs state, "Plaintiffs are appealing from the Order denying them to proceed under the tort of negligent spoliation with a lesser burden of proof." Their briefs and those filed by defendants are all limited to that issue.
[2] N.J.S.A. 26:8-5 provides:

The person in charge of a hospital, almshouse, lying-in, penal, or other institution, public or private, to which any person resorts for treatment of disease or for confinement, or is committed by process of law, shall make a record of all the personal and statistical particulars relative to each inmate in such institution, at the time of admission, and shall make a complete medical record covering the period of such person's confinement in such institution.
The medical records provided for herein or photographic reproductions thereof shall be retained by the custodian of records of such institution for a period of 10 years following the most recent discharge of the patient, or until the person confined therein reaches the age of 23 years, whichever is the longer period of time. In addition, a discharge summary sheet shall be retained by such custodian of records for a period of 20 years following the most recent discharge of the patient. The discharge summary sheet shall contain the patient's name, address, dates of admission and discharge and a summary of the treatment and medication rendered during the patient's stay. Any X-ray films related to such confinement, or any size reproductions thereof which maintain the clarity of the original shall be retained by such custodian of records for a period of 5 years.
In case of any person admitted or committed for treatment of disease, the physician in charge shall specify, for entry in the record, the nature of the disease and where, in his opinion, it was contracted.
The personal particulars and information required by this section shall be obtained from the individual himself if practicable; and when not, they shall be obtained in as complete a manner as possible from relatives, friends, or other persons acquainted with the facts.
[N.J.S.A. 26:8-5.]