**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0250-24

J&R PARAISO LLC, JOSE H.
HERNANDEZ, and JORGE
GUZMAN ARGUETA,

     Plaintiffs-Respondents/
     Cross-Appellants,

v.

ERICK GARCIA, individually,
and as Corporate Agent for 44
WATCHUNG AVE, LLC,
d/b/a MAMAJUANA CAFE,

     Defendant-Appellant/
     Cross-Respondent.

_____

     Submitted January 22, 2026 – Decided March 12, 2026

     Before Judges Mayer and Vanek.

     On appeal from the Superior Court of New Jersey, Law Division, Union County, Docket No. L-1251-23.

     Blick Law LLC, attorneys for appellant/cross-respondent (Shaun I. Blick, Drew J. Ruzanski and Ashley M. Ferreira, on the briefs).

James A. Key, Jr., attorney for respondents/cross-appellants.

PER CURIAM

Defendant Erick Garcia[1] appeals from an August 12, 2024 judgment entered in favor of plaintiffs J&R Paraiso LLC (J&R), Jose Hernandez and Jorge Guzman Argueta (Guzman) based on defendant's default under a promissory note and dismissing defendant's counterclaims with prejudice.[2] After our thorough review of the record and prevailing law, we affirm.

## I.

We glean the salient facts from the trial record. On May 7, 2021, defendant purchased Chez Maree bar and restaurant (Chez Maree) from J&R. The transaction was memorialized in several documents, beginning with a January 2020 "Agreement for the Sale and Purchase of Business & Alcoholic Beverage License" between J&R d/b/a Chez Maree and defendant (the Sales

---

[1] Defendant filed the counterclaims in his individual capacity and as agent of 44 Watchung Avenue LLC (Watchung) d/b/a Mamajuana Café.

[2] Plaintiffs also cross-appeal to "preserve[] their right to seek counsel fees and costs for having to respond to the [defendant's] appeal." We dismiss the cross-appeal as premature. See R. 2:5–1(f)(2); see also 1266 Apt. Corp. v. New Horizon Deli, Inc., 368 N.J. Super. 456, 459 (App. Div. 2004).

A-0250-24

Agreement).[3]  The Sales Agreement provided J&R would sell Chez Maree to defendant, together with its liquor license (the License) and related assets, for $250,000.  The Sales Agreement specified it was predicated on "consideration of the mutual covenants, promises and conditions contained herein, and for other good and valuable consideration."

Section 2 of the Sales Agreement expressly stated J&R would finance a portion of the purchase price under the terms of a promissory note to be executed at closing as follows:

> At the time of closing, [defendant] shall pay an additional . . . [$37,500.00] by certified check or other guaranteed funds.  At that same time of closing, [defendant] shall also execute a promissory note (which [J&R] may assign to its principals) in the amount of . . . [$200,000.00], representing the balance of the purchase price, together with interest at . . . [3%] on the unpaid balance.  The note shall provide for [thirty-six] monthly payments, commencing one month after the effective date of the transfer of the License, in the amount of $3,593.74 (based on a [sixty] month amortization), with the unpaid balance of principal, together with any unpaid interest and other charges (anticipated to be $83,611.74 if all [thirty-six] payments are timely paid), due and payable on the third anniversary of the effective date of the transfer of the License.  The note shall also provide that it may be

---

[3]  The Sales Agreement was between J&R d/b/a Chez Maree and "[defendant], individually or on behalf of a corporation or a limited liability company to be formed by him."  In January 2020, defendant executed the document individually then subsequently formed Watchung.

prepaid in part or full without penalty. The note shall also be guaranteed by the personal guarantee of the Maker of the note or its principal(s). Additionally, if [defendant] forms a corporation or limited liability company, the note shall be guaranteed by a pledge of the corporate stock or membership interests of the Maker of the note.

The Sales Agreement also contained a non-compete clause that prohibited plaintiffs from directly or indirectly having any interest in or engaging in a similar business within a five-mile radius of Chez Maree for five years after closing, unless the parties otherwise agreed in writing.

At the May 7, 2021 closing, J&R and Watchung executed "an Assignment of Liquor License 2012-33-032-008 issued by the City of Plainfield" and defendant remitted a total initial payment of $98,150. J&R financed the balance of the purchase price through a promissory note executed at closing by Watchung and defendant personally (the Note). The Note required repayment in thirty-six monthly installments of $4,362.18 beginning June 7, 2021, and specified available remedies in the event of default. Watchung also executed a Security Agreement giving J&R certain rights to its business assets in the event of default under the Note.

Between June 2021 and April 2022, defendant made installment payments totaling $55,000. Defendant did not remit any further payment following receipt

4

of plaintiffs' two subsequent default notices declaring the entire unpaid balance immediately due.

On April 18, 2023, plaintiffs filed a complaint against defendant seeking recovery of the unpaid accelerated principal under the Note, along with default interest and contractual attorney's fees. Defendant filed an answer with affirmative defenses and counterclaims asserting payment under the Note was excused because plaintiffs breached the Sales Agreement's non-compete clause. In support of his counterclaims, defendant alleged that shortly after the closing Guzman became publicly associated with Express Bar—located approximately one mile from Chez Maree—and solicited or "poached" defendant's employees, causing Chez Maree's revenue to substantially decline.

At a three-day bench trial, the judge heard testimony from ten witnesses, including defendant, Guzman, individuals associated with Express Bar, and former Chez Maree employees. Defendant did not dispute that $95,000 in principal remained outstanding under the Note. Defendant proffered testimony that sales declined precipitously after certain Chez Maree employees left but failed to produce any financial documentation or further testimony to substantiate the alleged economic loss.

A-0250-24

Plaintiffs' witnesses testified that defendant altered Chez Maree's cultural model, closed the establishment for approximately eight months for renovations, and later converted it into a Mamajuana Café franchise. While describing the changes defendant made to Chez Maree, Guzman agreed with defendant's position that Chez Maree's $20,000 monthly revenue had been reduced or eliminated. However, Guzman disputed that his actions caused the decline in revenue.

Based on defendant's undisputed default under the Note, the judge awarded plaintiffs $131,774.98—inclusive of unpaid principal, default interest calculated at eight percent from May 7, 2022 through September 7, 2024, and contractual attorney's fees and costs—for the reasons set forth in an August 12, 2024 written decision. The judge also held the Note and the Sales Agreement were separate contracts and defendant's default under the Note was not excused by plaintiffs' breach of the non-compete. Although the judge found plaintiffs had violated the Sales Agreement's non-compete clause through Guzman's actions, he concluded defendant had failed to establish damages resulting from plaintiffs' non-material breach of the Sales Agreement. Accordingly, the judge dismissed defendant's counterclaims with prejudice.

6

Defendant appealed, arguing the Note and the Sales Agreement comprised a single integrated contract that Guzman materially breached through his involvement with Express Bar, thereby excusing defendant's default; even if Guzman's breach was not material, plaintiffs' award should have been partially offset by defendant's damages; the trial court erroneously dismissed defendant's counterclaims; and the trial court erred by failing to apply defendant's affirmative defenses. We address defendant's arguments in turn.

II.

A.

Our standard of review of the trial judge's factual findings is deferential. Balducci v. Cige, 240 N.J. 574, 595 (2020). Specifically, in deciding an appeal from a judgment after a non-jury trial, we "give deference to the trial court that heard the witnesses, sifted the competing evidence, and made reasoned conclusions." Griepenburg v. Twp. of Ocean, 220 N.J. 239, 254 (2015). We defer to the judge's credibility findings, "because [the judge] has 'a better perspective than a reviewing court in evaluating the veracity of a witness.'" C.R. v. M.T., 248 N.J. 428, 440 (2021) (quoting Gnall v. Gnall, 222 N.J. 414, 428 (2015)).

A-0250-24

However, "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference" and are reviewed de novo. Rowe v. Bell & Gossett Co., 239 N.J. 531, 552 (2019). Accordingly, we review a trial court's interpretation of a contract de novo. Serico v. Rothberg, 234 N.J. 168, 178 (2018).

B.

After applying this firmly established standard of review and prevailing law to the trial record, we discern no error in the judge's dismissal of defendant's counterclaims with prejudice and the entry of judgment for plaintiffs.

i.

We first consider defendant's threshold argument that the Sales Agreement and Note comprise a singular contract. In finding the Note and Sales Agreement were distinct, unincorporated contracts, the judge stated "[t]here were no provisions linking performance under the Note to performance under the [Sales] Agreement." We disagree. Because the plain language of the Sales Agreement articulates the terms of the Note and references its anticipated execution, we conclude both documents comprise an integrated contract.

Whether multiple documents constitute a single integrated contract depends on the intent of the parties as expressed in their agreement. Alpert,

Goldberg, Butler, Norton & Weiss, P.C. v. Quinn, 410 N.J. Super. 510, 533 (App. Div. 2009). In Alpert, we set forth that:

> In order for there to be a proper and enforceable incorporation by reference of a separate document, the document to be incorporated must be described in such terms that its identity may be ascertained beyond doubt and the party to be bound by the terms must have had 'knowledge of and assented to the incorporated terms.'
>
> [Ibid. (quoting 4 Williston on Contracts § 30:25 (Lord ed. 1999)).]

Section 2 of the Sales Agreement expressly sets forth the terms of the Note and references its anticipated execution, providing that "[defendant] shall also execute a promissory note." The Sales Agreement is also predicated on "consideration of the mutual covenants, promises and conditions contained herein, and for other good and valuable consideration." Given the Note and Sales Agreement are expressly interdependent and the mutual covenants are part of the consideration for the transaction, we conclude the two documents comprise one integrated contract.

ii.

We discern no error in the judge's finding that defendant was neither excused from any portion of the payment obligations under the Note nor entitled

A-0250-24

to a monetary award in his favor, based on defendant's failure to establish damages resulting from a material breach.

To establish a breach of contract, a party must show the existence of "a valid contract, defective performance by [the other party] and resulting damages." Globe Motor Co. v. Igdalev, 225 N.J. 469, 482 (2016) (quoting Coyle v. Englander's, 199 N.J. Super. 212, 223 (App. Div. 1985)). A party asserting breach of contract, whether minor or material, bears the burden of proving damages with a reasonable degree of certainty under the circumstances and demonstrating the breach was the cause of those damages. Ibid.

"Proof of damages need not be done with exactitude," therefore it is "sufficient that the [party] prove damages with such certainty as the nature of the case may permit, laying a foundation which will enable the trier of the facts to make a fair and reasonable estimate." Totaro, Duffy, Cannova and Co., LLC v. Lane, Middleton & Co., LLC, 191 N.J. 1, 14 (2007) (quoting Lane v. Oil Delivery Inc., 216 N.J. Super. 413, 420 (App. Div. 1987)). However, "it is well-settled that the law 'abhors damages based on mere speculation.'" Mosley v. Femina Fashions, Inc., 356 N.J. Super. 118, 128 (App. Div. 2002) (quoting Caldwell v. Haynes, 136 N.J. 422, 436 (1994)).

A-0250-24

New Jersey law does not permit a party to withhold performance absent a failure of consideration or a material breach that deprives them of the benefit of the bargain.  See Nolan v. Lee Ho, 120 N.J. 465, 472 (1990).  A breach is material if it goes to the essence of the contract and substantially defeats the purpose of the agreement.  See Magnet Resources, Inc. v. Summit MRI, Inc., 318 N.J. Super. 275, 286 (App. Div. 1998).  Materiality of a breach of a sales contract is assessed utilizing the "flexible criteria" prescribed under the Restatement (Second) of Contracts, which includes consideration of:

> (a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;
>
> (b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;
>
> (c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;
>
> (d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances; [and]
>
> (e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.
>
> [Roach v. BM Motor., LLC, 228 N.J. 163, 174-75 (2017) (quoting § 241 Restatement (Second) of Contracts (A.L.I. 1981)).]

In applying these factors, courts "should evaluate the ratio quantitatively which the breach bears to the contract as a whole." Magnet Resources, 318 N.J. Super. at 286 (quoting Medivox Productions, Inc. v. Hoffmann-LaRoche, Inc., 107 N.J. Super. 47, 59 (Law Div. 1969)) (internal quotation marks omitted).

Here, the judge's decision focused on defendant's failure to establish damages—a crucial requirement to establish materiality of the breach under prevailing law. The absence of proof in the form of sufficient credible evidence as to damages proximately caused by Guzman's actions is fatal to his claim that plaintiffs' breach of the non-compete clause was material.

The limited evidence proffered by defendant to establish damages was his testimony that Chez Maree's $20,000 per month revenue declined when Guzman became involved with Express Bar and procured employees from Chez Maree. The judge found defendant's testimony was not credible. Uncredited testimony, without more, does not establish a reasonable basis upon which to fairly and reasonably estimate damages. Defendant had the opportunity to substantiate lost revenue through business records or an economic expert, yet he adduced no such corroborating documents or further testimony at trial.

Even if defendant had established damages through credible evidence, we are unconvinced the judge erred in finding defendant had also failed to prove

12

any reduction in revenue was proximately caused by Guzman's breach of the non-compete clause. See Nelson v. Elizabeth Bd. of Educ., 466 N.J. Super. 325, 343 (App. Div. 2021) (noting damages "must be a reasonably certain consequence of the breach although the exact amount of the loss need not be certain") (quoting Donovan v. Bachstadt, 91 N.J. 434, 445 (1982)).

Insofar as any uncorroborated decline in revenue was alleged to have stemmed from Guzman's soliciting of Chez Maree employees, the record does not demonstrate a causal connection between Guzman's breach, the employees' departure, and any resulting economic loss. There is no competent evidence in the record that Guzman's involvement with Express Bar prompted the exodus of any Chez Maree employees and led to lost revenue. Defendant was unable to name the "critical employees" whom Guzman was alleged to have solicited, much less explain how he was responsible for their departure. The former employees who did testify reported they were terminated by Chez Maree before they began working at Express Bar.

We also note that defendant also failed to demonstrate that he did not receive the contractual benefit of his purchase of Chez Maree from plaintiffs. Defendant testified that he purchased Chez Maree to derive monetary profit through operating a historically successful restaurant. Whether and to what

A-0250-24

degree Guzman's breach deprived defendant of his anticipated economic benefit could only be established through demonstrating lost profits. By failing to prove economic damages, defendant was unable to establish plaintiffs had materially breached the contract.

Conversely, the record further demonstrates that plaintiff's breach of the parties' contract was not material because defendant substantially retained the benefit of the contractual bargain, including ownership of the physical premises, his interest in the License, and Chez Maree's goodwill. Defendant was able to leverage Chez Maree's assets into a Mamajuana Café franchise, which further evidences Guzman's breach did not substantially undermine the essence of the parties' contract.

### iii.

We also discern no error in the judge's dismissal of the counterclaims and implied rejection of defendant's affirmative defenses based on the finding that defendant failed to prove damages. For this reason, defendant's counterclaims for breach of contract and fraudulent inducement and his equitable estoppel defense were not established under prevailing law. See Globe Motor Co., 225 N.J. at 482 (breach of contract); Banco Popular N. Am. v. Gandi, 184 N.J. 161,

14

173 (2005) (fraudulent inducement); D'Agostino v. Maldonado, 216 N.J. 168, 200 (2013) (equitable estoppel).

The judge's determination that defendant failed to prove any damages proximately caused by plaintiffs likewise forecloses application of the unclean hands doctrine. That equitable doctrine applies only where a plaintiff's own wrongful conduct directly caused the harm for which relief is sought. Chrisomalis v. Chrisomalis, 260 N.J. Super. 50, 54 (App. Div. 1992). Absent proof that plaintiffs' conduct proximately caused defendant's alleged damages, unclean hands cannot bar relief. Additionally, the judge found no "inherent inequity . . . in requiring [defendant] to continue paying upon the Note." See Pellitteri v. Pellitteri, 266 N.J. Super. 56, 65 (App. Div. 1993) (recognizing inequity is the fundamental predicate of the unclean hands doctrine).

The statute of frauds defense is equally unavailing, given the parties' agreements were properly reduced to writing. See Maeker v. Ross, 219 N.J. 565, 578 (2014). To the extent we have not otherwise addressed the parties' arguments, it is because they do not merit discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division

A-0250-24