62 N.J. Super. 269 (1960)
162 A.2d 904
PAULA SCHISANO, ADMINISTRATRIX AD PROSEQUENDUM AND ADMINISTRATRIX OF THE ESTATE OF JOHN SCHISANO, DECEASED, PLAINTIFF-RESPONDENT,
v.
BRICKSEAL REFRACTORY CO., A CORPORATION, XZIT BRICKSEAL CO., A CORPORATION, AND XZIT CHEMICAL CO., A CORPORATION, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued May 3, 1960.
Decided June 27, 1960.
*271 Before Judges PRICE, GAULKIN and SULLIVAN.
Mr. Bernard Chazen argued the cause for plaintiff-respondent (Messrs. Baker, Garber & Chazen, attorneys).
Mr. John W. Taylor argued the cause for defendants-appellants.
The opinion of the court was delivered by SULLIVAN, J.A.D.
This case grows out of a dispute over the parking of plaintiff-decedent's vehicle in a private parking lot. The suit is against three corporate defendants (herein considered as one and referred to as the defendant).
The facts, which are not disputed, are that on March 23, 1956, Ferdinand R. Lavezzo, an officer of defendant, left defendant's building to go to the bank to pick up the payroll. He was accompanied by John Ottino, an employee of defendant, who was acting as a guard on the trip to the bank. Ottino who was rather small in stature, and was 66 years of age, was employed as a maintenance and general utility man by defendants. One of his duties was to keep defendant's loading platform and private parking lot clear of vehicles that had no right to park there.
As the two men went to defendant's parking lot to get a car, they noticed a vehicle parked in front of defendant's loading platform despite "No Parking" signs. The vehicle had a card inserted under its windshield wiper indicating that it belonged to Central Food Market which was located across the street. Lavezzo went over to the market and spoke to John Schisano, the owner of the market, and told him to move the vehicle. Lavezzo and Ottino then proceeded to the bank and picked up the payroll. Upon their return they found that Schisano had moved his vehicle from in front of the loading platform and had parked it in defendant's private parking lot in the very spot that had been vacated to go to the bank. Lavezzo again went over to the market and spoke to Schisano who was standing on the *272 sidewalk and told him to get his car out of the lot. Lavezzo stood in the gutter a few feet away from Schisano and was separated from him by a two-foot high snowbank which was at the curb. Some discussion took place with Schisano saying that he had no place to park, and Lavezzo telling him that it was his problem and not Lavezzo's. This "bickering" went on for a few minutes at which point Ottino, who had been waiting on the other side of the street, crossed over to where Lavezzo was standing and asked Lavezzo if he wanted the car towed away. Lavezzo replied in the negative. Schisano, however, became very excited and said "What are you trying to do, give me a hard time?" and came over the snowbank towards Ottino with his arms raised above his head and bent and his fists clenched. As he reached Ottino, Ottino punched him in the jaw and knocked him down. Lavezzo was unable to say whether the arms of Schisano had moved at all towards Ottino before the punch was struck. Ottino did not fend off any blow. Schisano got up immediately and commented on what he would have done if Ottino were a younger man. This ended the incident and the parties left. Schisano died the next morning at about 4 A.M. from a heart attack. He was 42 years of age at the time of his death.
Plaintiff, the widow of Schisano, filed this suit against defendant as the employer of Ottino, charging that Ottino, while acting within the scope of his employment, had wrongfully struck her husband and caused his death. She charged that Ottino struck her husband with the consent, permission, and at the instruction of Lavezzo. She also charged that defendant knew or should have known of the vicious nature and disposition of Ottino. She sued as general administratrix for pain and suffering and expenses, and as administratrix ad prosequendum under the "Wrongful Death Act." Ottino was not joined as a party defendant, he having died prior to the commencement of suit. Defendant denied any wrongdoing on its part and, inter alia, pleaded that Ottino was acting in self-defense.
*273 At the trial the causal relationship between the blow struck and Schisano's subsequent death was one of the issues which was submitted to the jury. On this question the jury "Unanimously agreed that the blow aggravated and led to the heart attack and the death of Mr. Schisano." For the purposes of this appeal defendant does not dispute the jury's finding of causation.
At the conclusion of the trial the jury rendered a verdict in favor of plaintiff for $35,000 in the death action, and $2,500 on the count for pain and suffering. This latter award was reduced to $750 by the court on a motion to set aside the verdict. Defendant appeals the entire judgment.
The only known eyewitness to the altercation between Ottino and Schisano, and the only person who testified as to what actually happened was Ferdinand R. Lavezzo. His deposition was read in evidence by plaintiff as part of her case, and he also testified on behalf of the defendant. The substance of his story has been heretofore detailed. However, he also testified that Ottino had not been in any prior fights or altercations and that he had not given Ottino any instructions to strike Schisano. The basic issues in the case therefore as developed by the testimony were whether or not Ottino's striking of the decedent was in the course of Ottino's employment, and in any event was justified under the circumstances.
The trial judge, on motions for dismissal made by defendant's counsel at the conclusion of plaintiff's case and at the end of the entire case, held that jury questions were presented as to both issues and he submitted them to the jury under instructions which defendant has not challenged on this appeal. The jury's verdict, special in form, was that Ottino was acting in behalf of defendant when he struck Schisano and that he was not justified in striking the blow. The verdict on causation and the amount of the verdict then followed.
It is the position of defendant on this appeal that on the testimony of Mr. Lavezzo, it being the only evidence as to *274 the incident between Schisano and Ottino, the trial judge should have ruled as a matter of law that Ottino was justified in punching Schisano, and further that the altercation was a personal dispute between the two men unrelated to Ottino's employment.
Defendant's position on these issues is untenable. Granted that the issues of justifiable self-defense and scope of employment must be considered within the framework of Lavezzo's testimony, it is clear that jury questions were presented as to both questions.
Whether Ottino's punching Schisano was an act of justifiable self-defense was a question of fact, and as to this issue the burden of proof was on defendant. Certainly it cannot be said that as a matter of law Ottino's act was so clearly warranted by the circumstances that no jury could properly conclude that he acted hastily or unreasonably. True, it was the opinion of the sole eyewitness that Schisano's actions indicated that he was on his way to fight it out with Ottino. Nevertheless, the jury might well have concluded that Ottino should have waited to see if Schisano actually attempted to strike him, or might have fended him off, or pushed him away. Conceivably the jury might have felt that Ottino was not acting in self-defense at all but was putting an end to Schisano's "bickering" about the removal of his vehicle. The trial court properly left this question to the jury.
The issue of defendant's responsibility for Ottino's action was also a question of fact. An employer is responsible for the wrongful acts of his employee if done within the scope of his employment upon the express or implied authority given him, considering the nature of the service required and the circumstances under which the act was committed. Smith v. Bosco, 126 N.J.L. 452 (E. & A. 1941). Where the scope of the authority of an employee is a disputed question of fact, the extent of the authority is ordinarily a question for the jury, except where the departure *275 from the employer's business is of a marked and decided character. Smith v. Bosco, supra.
In the present case the incident was over Schisano's parking his vehicle in defendant's private parking lot and his reluctance to remove it even after being told to do so. The remark that brought the matter to a climax was Ottino's inquiry to one of defendant's officers as to whether or not he wanted the vehicle towed away. One of Ottino's duties was to keep the lot clear of unauthorized parkers. While the blow struck by Ottino may have been in his personal defense, as has been noted, it may also have been Ottino's way of giving emphasis to the instructions given Schisano to remove his vehicle. It may have been a combination of both reasons. See Gibson v. Kennedy, 23 N.J. 150 (1957). The affair certainly was related to his employment and a jury question was presented as to whether the act was in furtherance and discharge of defendant's business and within the scope and limits of Ottino's employment.
Smith v. Bosco, supra, also involved a dispute over the plaintiff's parking his vehicle on private property. There the altercation became so heated that plaintiff was stabbed by an employee in charge of the property. On appeal the Court of Errors and Appeals held that a jury question was presented as to whether the employee's wrongful act was in the course of his employment and within the scope of his authority. To like effect is Gibson v. Kennedy, supra, where plaintiff, a railroad employee, and the conductor of a train became embroiled in a dispute over plaintiff's riding on a "deadhead" train. In the fight that ensued the conductor hit plaintiff in the face with a lantern. The Supreme Court there held that the responsibility of the Railroad for the action of the conductor was a question for the jury. See also King v. Patrylow, 15 N.J. Super. 429 (App. Div. 1951).
Restatement (Second), Agency § 245 (1958), expresses the applicable principle as follows:
"A master is subject to liability for the intended tortious harm by a servant to the person or things of another by an act done *276 in connection with the servant's employment, although the act was unauthorized, if the act was not unexpectable in view of the duties of the servant."
In a comment appended to the above section it is stated that the tendency of the appellate courts has been to allow triers of facts considerable discretion in finding a connection between the employment and the blow.
The final point made by defendant is that even assuming that there was sufficient evidence to submit the issues of justifiable self-defense and scope of employment to the jury, the trial court should have granted defendant's motion to set the verdict aside as contrary to the weight of the evidence.
There is no doubt but that a verdict may properly be set aside as contrary to the weight of the evidence, even though the state of the evidence would not justify the direction of a verdict at the close of the proofs. Franklin Discount Co. v. Ford, 27 N.J. 473 (1958). On a motion for a new trial the trial judge must weigh the evidence to determine whether the verdict was one which might reasonably have been reached.
However, where a trial judge grants or denies a motion for a new trial, an appellate court in reviewing the ruling must recognize the trial judge's superior opportunity to weigh the evidence and determine whether or not justice has been done under the particular circumstances. Hartpence v. Grouleff, 15 N.J. 545 (1954); Kovacs v. Everett, 37 N.J. Super. 133 (App. Div. 1955). His ruling is not to be set aside absent a clear showing that it would otherwise result in a manifest injustice.
Considering the present case within the scope of our review we cannot say that the trial judge's refusal to grant a new trial "was a manifest denial of justice." Hartpence v. Grouleff, supra, 15 N.J., at p. 549.
Affirmed.
GAULKIN, J.A.D. (dissenting).
This action is not against Ottino, the employee, but against his employers.
*277 Even if it were against Ottino alone, I doubt whether plaintiff would be entitled to recover. As I read the record, it seems to me that the 66-year-old Ottino had every reason to believe that Schisano, almost 25 years younger than he, was charging over the snow bank to attack him. For what other reason would he be coming? Merely to argue? He had been arguing with Lavezzo for five to seven minutes from the sidewalk. Why then did he rush at Ottino (and not at Lavezzo) with clenched fists over difficult terrain, except to fight because angered by Ottino's question to Lavezzo? I find nothing in the testimony that would justify a jury in reaching a conclusion that Ottino had no reason to fear he was being attacked.
Ottino never moved towards Schisano. He was not under a positive duty to retreat, or to wait to be hit first; and it seems to me that when Schisano charged upon him in this fashion, and came close enough to Ottino to hit him, the latter had the right to strike first. State v. Goldberg, 12 N.J. Super. 293 (App. Div. 1951). It appears to me that this is so clear from the evidence that plaintiff's case could properly have been dismissed on this ground alone. In any event, I am of the opinion that the verdict of the jury to the contrary was so clearly against the weight of the evidence that it was obviously the result of passion, prejudice or mistake, and that defendant's motion for a new trial should have been granted.
Furthermore, the evidence does not seem to me to justify the charge given by the court that:
"If you find that Ottino used excessive force in striking the deceased, the said act is tortious even though you may find that the deceased was the aggressor in the argument that preceded it."
The testimony shows that the blow was not unusual  it caused merely a swelling of the face and an abrasion on the inner aspect of the cheek. The result of the blow was unfortunately "excessive" because of Schisano's preexisting cardiovascular condition, but that did not make the force *278 used by Ottino excessive. Because of the unfortunate result of the blow, the quoted charge may have misled the jury, especially since the court told the jury that the excessive force would be "tortious even though you may find that the deceased was the aggressor in the argument" (emphasis ours), and did not qualify that statement with any suggestion that Ottino had any right to stand his ground, or with any instruction as to the law if they found Ottino believed, with reason, that Schisano was intent upon physical and not merely argumentative aggression.
It is admitted that there was no evidence to support plaintiff's claim that Ottino was a person of vicious propensities. The evidence was to the contrary, and that issue was withdrawn from the jury.
I have discussed the liability of Ottino so fully because it seems to me that what happened between Ottino and Schisano, and why Ottino did what he did when he did it, have a direct bearing upon whether Ottino "was acting in the scope of his employment and with the purpose of furthering defendant's business," upon which the defendant's liability depends. Gibson v. Kennedy, 23 N.J. 150, 160 (1957). It is, of course, not sufficient that Ottino may have been liable to plaintiff, nor is it sufficient that Ottino struck Schisano during the hours of his employment. Plaintiff must go further and prove by the greater weight of the evidence that Ottino was acting in the scope of his employment and with the purpose of furthering defendant's business.
It seems to me that on that issue there was not sufficient evidence preponderating in plaintiff's favor to go to the jury, and that the motion made by defendant for dismissal at the end of plaintiff's case, and repeated at the conclusion of the entire case, should have been granted for the reasons stated by defendant's counsel. He said:
"* * * Now, we don't deny that Mr. Ottino struck this blow but certainly the jury can't say well, Mr. Ottino struck this blow when he was acting as agent for any one of these corporations. The only testimony is that [Schisano] was coming at him, as Mr. *279 Lavezzo says, in a threatening manner. Now, whether or not Mr. Ottino was justified in hitting him or whether he was unjustified in hitting him, the only conclusion from the testimony that can be drawn is that he thought he was going to be hit. Maybe he was unjustified in the thought but at least he thought he was going to be hit and he was protecting himself. He certainly wasn't protecting Mr. Lavezzo because Mr. Lavezzo said, `He wasn't coming at me, he was coming at Mr. Ottino.' Whether or not Mr. Ottino was justified in hitting him, the testimony is crystal clear that it could not possibly have been for any other purpose other than self-protection. Whether that particular defense is warranted or unwarranted it wasn't on behalf of the corporation."
See also: Restatement, Agency 2d, §§ 228, 245; Seavey, Studies in Agency, 256-261 (1949). Harper and James say (The Law of Torts, Vol. 2, § 26.9, p. 1392):
"Perhaps the most troublesome case is that where the master's affairs are not being furthered but the servant hurts plaintiff in a quarrel that does arise out of the employment. A truck driver and plaintiff collide, for example, and in the altercation so likely to follow such an incident the driver loses his temper and strikes plaintiff. Or a restaurant counterman is angered by insults over the matter of a sandwich, and hits a customer. The majority of courts do not allow recovery in these cases except where it can be rested on some narrower ground such as the nondelegable duty, or negligence in employing a man known to be hot-tempered * * *"
In the case at bar there is far more reason to find nonliability of the employer than in the cases cited by Seavey and by Harper and James in which employers were held not liable, because in those cases the employee was not first physically threatened by the plaintiff, as Ottino was here. I know of no case in which an employer has been held liable for injuries sustained by an aggressor. It seems to me that there is a fundamental difference between cases in which the employee is or becomes the assailant after having begun the carrying out of his authorized duties (as in Smith v. Bosco, 126 N.J.L. 452 (E. & A. 1941) and Gibson v. Kennedy, supra) and those in which he strikes upon being unexpectedly assaulted, as was the case here, even if it be in a quarrel that arises out of the employment. If Ottino reacted to *280 Schisano's actions in self-defense or (as was said in 3 Restatement, Agency 2d, p. 395), "wholly from anger and without reference to the benefit of his employer's business, even though the quarrel arises over an incident in the scope of employment," defendant was not liable.
It was plaintiff's burden of proof to establish that Ottino, "though overly aggressive in adopting methods not authorized by his employer," was nevertheless carrying out the duties of his employment and with the purpose of furthering defendant's business. Gibson v. Kennedy, supra; cf. Sauter v. New York Tribune, Inc., 305 N.Y. 442, 113 N.E.2d 790 (Ct. App. 1953). In my opinion, the evidence in this case did not sustain that burden, and defendant's motion for judgment of dismissal should have been granted.
For these reasons I vote to reverse.