997 A.2d 273 (2010)
414 N.J. Super. 1
Vandella DAVIS, as Guardian Ad Litem for Roland Davis, Plaintiff-Appellant,
v.
DEVEREUX FOUNDATION, Devereux New Jersey Treatment Network, Defendants-Respondents, and
Charlene McClain, Defendant.
DOCKET NO. A-0580-09T1.
Superior Court of New Jersey, Appellate Division.
Argued April 19, 2010.
Decided June 25, 2010.
*274 Kyle T. Kievit, Linwood, argued the cause for appellant.
Jay A. Gebauer, Princeton, argued the cause for respondent (Post & Schell, attorneys; Mr. Gebauer and Quinn M. McCusker, on the brief).
Before Judges LISA, ALVAREZ and COBURN.
The opinion of the court was delivered by
COBURN, J.A.D. (temporarily assigned on recall).
Plaintiffs appeal from summary judgment on their complaint against defendants Devereux Foundation and Devereux New Jersey Treatment Network ("Devereux").
This case arose out of an assault and battery by defendant Charlene McClain on plaintiff Roland Davis, who is severely autistic and developmentally disabled. McClain was then employed by Devereux, a charitable foundation. She was a resident counselor in Devereux's New Jersey facility, which houses and treats people with emotional, developmental and educational disabilities. She severely injured Davis by pouring boiling water on him when she went to get him out of bed in the morning. Her motive may have been personal, or she may have acted in part to serve her employer by using the water as a form of discipline.
The first question we are asked to resolve is whether Devereux is liable under the common-law doctrine of respondeat superior on the theory that its duty of care to Roland is non-delegable. The second question is whether Devereux may have common-law liability under other principles of respondeat superior. If the answer to either of those questions is yes, we must determine whether the plaintiffs may be awarded punitive damages. Since the trial court granted Devereux's motion for summary judgment respecting liability on reconsideration after initially denying it, we must also determine whether reconsideration was procedurally unwarranted.
We note that after disposing of the case against Devereux, the trial court entered a default judgment against McClain for assault and battery and intentional infliction of emotional distress, assessing over $500,000 in compensatory damages and $250,000 in punitive damages.

1[1]
Devereux is a national, charitable organization that provides services for people with emotional, developmental, and educational disabilities. McClain began working for Devereux in 2002 as a resident counselor, a low-level, non-managerial position. Roland Davis became a resident in *275 Devereux's New Jersey facility in 1997. His diagnoses include autism, mental retardation, pervasive developmental disorder, and attention deficit-hyperactivity. Among other things, he has difficulty controlling his impulses and is quite aggressive.
McClain was assigned the task of caring for Davis. Before the incident in question he attacked her on several occasions, spitting, kicking and throwing things at her.
The incident occurred on the morning of October 9, 2004. The only source provided to us for the critical facts is a police report containing the officer's recollection of his interview with McClain. According to the report, McClain arrived for work at 7:10 a.m. After a few minutes, she went into the kitchen and put a cup of water into the microwave, boiling it for one minute. She went upstairs to get Davis dressed for the day. She took the cup of boiling water because she thought Davis might attack her. She told Davis to get out of bed and then poured the water on him even though he had not yet made an aggressive move toward her. She did not see any burn marks, and went downstairs after telling him to take a shower. She said that she was "just mad," and had been feeling that way since her boyfriend was shot and killed about six months earlier.
The boiling water caused severe injuries. Davis spent six days in the hospital and was left with "permanent scarring over a large area of the front of his body."

II

A
Plaintiffs claim that our case law has already established the proposition that charitable institutions housing and caring for the mentally disabled have a duty of care to their clients that is non-delegable. The cases plaintiff relies on are Frugis v. Bracigliano, 177 N.J. 250, 827 A.2d 1040 (2003); Hardwicke v. American Boychoir School, 368 N.J.Super. 71, 845 A.2d 619 (App.Div.2004), aff'd as modified and remanded, 188 N.J. 69, 902 A.2d 900 (2006); and J.H. v. Mercer County Youth Detention Center, 396 N.J.Super. 1, 930 A.2d 1223 (App.Div.2007). Although some language used in those decisions, other than Frugis, creates doubt, we are satisfied that plaintiffs' proposition is not the law of this state.
We reject plaintiffs' argument that Frugis "squarely articulated" a non-delegable duty owed by educational institutions to their students. The case concerned a public school board's liability for a high school principal's sexually inappropriate conduct involving students. The Court observed that "[n]o greater obligation is placed on school officials than to protect the children in their charge from foreseeable dangers, whether those dangers arise from the careless acts or intentional transgressions of others." Frugis, supra, 177 N.J. at 268, 827 A.2d 1040. But the Court ruled that the board's duty was to use "reasonable measures" to insure that its staff was "not exploiting[] vulnerable children." Ibid. The board's liability was not based on vicarious liability. Rather, it was held directly liable for negligent supervision, id. at 270-71, 827 A.2d 1040, and the decision included a remand for a comparison of fault between the board for its negligence and the principal for his intentional torts. Id. at 278-83, 827 A.2d 1040.
When a duty is non-delegable, the employer's use of care is irrelevant. Majestic Realty Assocs., Inc. v. Toti Contracting Co., 30 N.J. 425, 439, 153 A.2d 321 (1959); Restatement (Second) of Agency, § 214, comment a (1958). Since Frugis turned on the board's failure to use reasonable care, it provides no support for the *276 suggestion of a non-delegable duty in these or similar circumstances.
Turning to Hardwicke, we consider first the Appellate Division's decision. The case arose from sexual mistreatment of resident students by employees of a charitable private school. After holding that the school could be liable as a passive abuser under the Child Sexual Abuse Act ("CSAA"), N.J.S.A. 2A:61B-1, if it knew of the abuse and failed to provide protection, the court addressed the common-law claims, which included assault and battery and intentional infliction of emotional distress. The court held that the Charitable Immunity Act ("CIA"), N.J.S.A. 2A:53A-7 to -11, did not bar the school's liability for intentional torts, Hardwicke, supra, 368 N.J.Super. at 102, 845 A.2d 619, and then discussed respondeat superior liability.
The court began with this proposition: "the fact that the underlying conduct ... giving rise to liability was intentional does not necessarily absolve the school of liability for it." Id. at 104, 845 A.2d 619. The court then took note of Cosgrove v. Lawrence, 214 N.J.Super. 670, 520 A.2d 844 (Law Div.1986), aff'd, 215 N.J.Super. 561, 522 A.2d 483 (App.Div.1987). It described Cosgrove as holding that a public employer could not be held liable for its employee's sexual relations with a client because the acts were outside the scope of the employee-therapist's employment. Hardwicke, supra, 368 N.J.Super. at 104, 845 A.2d 619. The court said that Cosgrove was distinguishable because there "the employer's duties arose solely as the result of the employment relationship." Ibid. It then made this comment:
As Frugis suggests, a school that stands in an in loco parentis relationship to a boarding student in its charge has a different relationship to the student, giving rise to a non-delegable duty to take reasonable measures to safeguard the student and ensure that its employees do not endanger or exploit the child. Frugis, supra, 177 N.J. at 268, 827 A.2d 1040.
[Id. at 104-05, 845 A.2d 619 (citing Frugis, supra, 177 N.J. at 268, 827 A.2d 1040) (emphasis added).]
Although Frugis requires reasonable care by the school board, the concept of non-delegable duty does not appear in the Supreme Court's opinion. That makes sense since the two concepts are incompatible in relation to liability of a principal. As we noted above, when the duty is non-delegable, the principal's exercise of reasonable care is irrelevant. Consequently, we are at a loss to understand the reference to non-delegable duty in the indented quotation immediately above.
The court then cites Lehmann v. Toys `R' Us, Inc., 132 N.J. 587, 626 A.2d 445 (1993), declaring that Lehmann "recognized agency principles as set forth in the Restatement (Second) of Agency § 219(2)(c) and (d) as providing a basis for respondeat superior liability." Hardwicke, supra, 368 N.J.Super. at 105, 845 A.2d 619.
Section 219 outlines the liability of a master for the torts of a servant as follows:
(1) A master is subject to liability for the torts of his servants committed while acting in the scope of their employment.
(2) A master is not subject to liability for the torts of his servants acting outside the scope of their employment, unless:
(a) the master intended the conduct or the consequences, or
(b) the master was negligent or reckless, or
(c) the conduct violated a non-delegable duty of the master, or

*277 (d) the servant purported to act or to speak on behalf of the principal and there was reliance upon apparent authority, or he was aided in accomplishing the tort by the existence of the agency relation.
[Restatement, supra, § 219.]
In fact, Lehmann, which involves employers' liability for sexual harassment and discrimination, does not discuss section 2(c) at all, and instead asserts possible liability only under sections 1, 2(a), 2(b), and 2(d). Lehmann, supra, 132 N.J. at 619-23, 626 A.2d 445. Although Lehmann did not refer specifically to section 2(c), which concerns non-delegable duty and thus strict liability, it clearly rejected its application to sexual harassment and discrimination in employment when it said this:
We recognize that ... we have declined to hold employers strictly liable for hostile work environment sexual harassment by supervisors....
[Id. at 623, 626 A.2d 445 (emphasis added).]
The Hardwicke opinion then concludes this discussion by referring to "the Restatement's § 214 (providing that a master, under a non-delegable duty of care, who delegates that duty to a servant is liable for the failure of the servant to perform that duty)." Hardwicke, supra, 368 N.J.Super. at 105, 845 A.2d 619.
Although we recognize that the Appellate Division's Hardwicke opinion stands for the proposition that section 2(c) applies to a school in which students reside, we cannot agree that the opinion demonstrates acceptance of that proposition by the authorities it cites.
The next question is whether the Supreme Court's opinion in Hardwicke should be understood as agreeing with the Appellate Division's application of section 2(c) in this setting.
The Court's opinion focuses primarily on the meaning of the CSAA, its relationship to the CIA, and whether the CIA provides immunity for intentional torts. Hardwicke, supra, 188 N.J. at 82-100, 902 A.2d 900. The discussion of vicarious liability for intentional conduct at common law is brief. Id. at 100-02, 902 A.2d 900.
The Court describes the relevant principles as those set forth in "section 219 of the Restatement (Second) of Agency (1958) and Lehmann," id. at 101, 902 A.2d 900, and then says this:
Under section 219 of the Restatement, an employer is not liable for the torts of an employee acting outside the scope of the employment unless "the conduct violated a non-delegable duty of the [employer], or ... the [employee] purported to act ... on behalf of the [employer] and there was reliance upon apparent authority, or [the employee] was aided in accomplishing the tort by the existence of the agency relation."
[Ibid. (alterations in original) (citations omitted).]
After summarizing Lehmann's discussion of section 2(d) without referring again to section 2(c), id. at 101-02, 902 A.2d 900, and after noting that in Abbamont v. Piscataway Township Board of Education, 138 N.J. 405, 417, 650 A.2d 958 (1994), it had extended its holding in Lehmann to claims under the Conscientious Employee Protection Act, N.J.S.A. 34:19-1 to -8, the Court said this:

The considerations that informed our analyses in Lehmann and Abbamont apply equally to claims predicated on facts indicating child abuse. As stated earlier ..., the CSAA recognizes the vulnerability of children and demonstrates a legislative intent to protect them from victimization. In our view, *278 common-law claims based on child abuse are supported by the same rationale. The CSAA imposes responsibility on those in the best position to know of the abuse and stop it; application of section 219 of the Restatement to plaintiff's common-law claims advances those goals.
[Hardwicke, supra, 188 N.J. at 102, 902 A.2d 900 (emphasis added) (citation omitted).]
Turning to the last issue, which involved the American Boychoir School's potential liability for sexual misconduct by one of its employees during the summer when the school was not in session, the Court noted that the Appellate Division had held that "the CIA did not bar Hardwicke's claims for intentional conduct, and that agency principles could provide the basis for respondeat superior liability," and said it agreed with that "disposition of this issue." Ibid.
Read broadly, the Supreme Court's opinion might be understood as endorsing the Appellate Division's conclusion that section 2(c) of the Restatement applied in these circumstances. But we reject that interpretation despite the language indicating approval of the "disposition of this issue." We do so for the following reasons.
Generally, the standard governing conduct is reasonable care. "The primary reason for imposing a non[-]delegable duty on the principal is that the duty is of extraordinary importance to the public." Great N. Ins. Co. v. Leontarakis, 387 N.J.Super. 583, 592, 904 A.2d 846 (App. Div.2006) (citation omitted). Our courts have imposed non-delegable duties in a few settings, but they have done so only after full consideration of the issue. See id. at 591-92, 904 A.2d 846. In sharp contrast, the Supreme Court's Hardwicke opinion does not contain any discussion of nondelegable duty, merely noting that it appears as one of the bases for liability in section 219 of the Restatement. See Hardwicke, supra, 188 N.J. at 100-02, 902 A.2d 900.
More tellingly, as quoted above, the Court said that "[t]he considerations that informed our analyses in Lehmann and Abbamont apply equally to claims predicated on facts indicating child abuse." Id. at 102, 902 A.2d 900 (emphasis added). Since both Lehmann and Abbamont rejected the application of non-delegable duty, and since Hardwicke says that the same considerations that informed those cases apply equally here, we perceive no basis for reading the Court's opinion as introducing what would clearly be a major doctrinal change respecting the law governing institutions that care for children and the disabled. Therefore, we conclude that the Court did not intend to endorse the Appellate Division's ruling that the defendant had a non-delegable duty. Rather, we believe the Court was indicating that the other provisions of section 219 might apply, depending on the circumstances.
In J.H., supra, 396 N.J.Super. at 18, 930 A.2d 1223, the last case on which plaintiffs rely for their strict liability argument, the court held that "the passive abuser liability provision of the CSAA applies to the County defendants." The court reached that conclusion after discussing Lehmann, Abbamont, Frugis, and Hardwicke. Id. at 16-18, 930 A.2d 1223. It inferred from those cases that
modern principles of vicarious liability contained in the Restatement, supra, § 219(2)(c) would apply to the actions of the supervisors of the Detention Center who violated the Detention Center's non-delegable duty to protect the juveniles entrusted to its care from sexual *279 abuse at the hands of employees granted supervisory authority over them.
[Id. at 18, 930 A.2d 1223.]
In reaching the conclusion that section 219(2)(c) was the basis for liability, the J.H. court made essentially the same mistaken analysis that appears in the Appellate Division's Hardwicke opinion and mischaracterized the Supreme Court's Hardwicke opinion as creating a non-delegable duty in these circumstances. Id. at 16-17, 930 A.2d 1223.
Although we accept J.H.'s determination of liability under the CSAA, we disagree with the reasoning leading up to that conclusion. The CSAA does not create a non-delegable duty. To be liable under that act, the principal must have actual or constructive knowledge that the abuse is occurring and must fail to protect the child. Hardwicke, supra, 188 N.J. at 86, 902 A.2d 900. Were the duty created by the statute truly non-delegable, liability would be present without knowledge. Furthermore, the legal principles set forth in the Restatement are intended to be summaries of the common law; liability under the CSAA is solely a matter of statutory construction. Thus, the Restatement does not provide a basis for interpreting the CSAA.
In J.H., the plaintiff also wanted to pursue common-law claims against the County. J.H., supra, 396 N.J.Super. at 20, 930 A.2d 1223. The court's opinion assumes without discussion that those claims would be viable under section 2(c), rejecting them only because of plaintiff's failure to satisfy the requirements of N.J.S.A. 59:9-2(d) regarding the quantity and nature of damages needed in an action under the Tort Claims Act. Ibid.
Had the Supreme Court believed that common-law liability could be established in these circumstances under section 2(c) of the Restatement on the theory that the duty was non-delegable, we believe it would have expressly said so. Certainly that issue was squarely before it. Since the Court's Hardwicke opinion implicitly rejects application of section 2(c) in this setting, it would be wrong for us to apply it to this case.
The issue of non-delegable duty in circumstances similar to ours has come up in other jurisdictions. For example, in Stropes v. Heritage House Childrens Center of Shelbyville, Inc., 547 N.E.2d 244 (Ind.1989), the court considered the defendant's liability for a sexual assault committed by a nurse's aide upon a mentally disabled youngster who resided in the institution. Although the opinion based liability in part on the concept of a non-delegable duty, id. at 253-54, it also held that a jury could find that the conduct of the employee was intended "to an appreciable extent to further his master's business." Id. at 250. In a later decision, the court described that non-delegable-duty holding in a footnote as an "independent, alternate basis" for its decision, perhaps implying that it was less sound than Stropes's more traditional basis of liability. Barnett v. Clark, 889 N.E.2d 281, 285 n. 2 (Ind.2008).
In Niece v. Elmview Group Home, 131 Wash.2d 39, 929 P.2d 420 (1997), which involved a staff member's sexual assault on a woman in a home for the developmentally disabled, the court rejected the non-delegable duty aspect of Stropes, discussing at some length the public policy considerations which it found persuasive in reaching that result. Id. at 430-31.
In a case involving sexual assaults of children by private school employees, Massachusetts's highest court also rejected imposition of liability based on a non-delegable duty. Worcester Ins. Co. v. Fells Acres Day Sch., Inc., 408 Mass. 393, 558 N.E.2d 958, 966-68 (1990).

*280 B

Since there is no suggestion that Devereux intended its employee's conduct or its consequences, or that it was negligent or reckless, sections 2(a) and 2(b) of section 219 of the Restatement are inapplicable. However, we are obliged to consider sections 1 and 2(d), which were considered relevant in Lehmann, Abbamont, and Hardwicke. Section 1 concerns liability for torts "committed while acting in the scope of employment," and section 2(d) imposes liability for torts outside the scope of employment when, among other things, the servant "was aided in accomplishing the tort by the existence of the agency relation."
In Gibson v. Kennedy, 23 N.J. 150, 128 A.2d 480 (1957), Chief Justice Weintraub considered the liability of a railroad for an assault on a passenger by one of its conductors. The passenger attempted to board the train after being told by the conductor that passengers were no longer permitted on it. A dispute arose during which the conductor repeatedly struck the passenger with a lantern, either out of a personal grievance between the men that long preceded the incident, or to keep the passenger from boarding the train, or both. The appeal was from a jury verdict awarding the passenger damages.
Our former chief justice viewed the record as permitting the jury to conclude that the attack was based solely on a pre-existing personal grievance, or that the "private motive played no role at all, or in any event, although concurring, did not exclude the purpose to further defendant's business." Id. at 157, 128 A.2d 480. Sustaining the jury's verdict, he then said this:
Nor can liability turn upon whether the means used by Kennedy were appropriate or prudent or exceeded the needs of the occasion or the authority conferred. Assaults and batteries rarely, if ever, redound to the economic advantage of the employer, and it may readily be assumed the employer would not wish them. The outrageous quality of an employee's act may well be persuasive in considering whether his motivation was purely personal, but if the employee is within the scope of employment and intends to further the employer's business, the employer is chargeable even though the employee's conduct be "imbecilic."
[Id. at 157-58, 128 A.2d 480 (citations omitted).]
The main opinion on which the Court relied in Gibson was Nelson v. American-West African Line, Inc., 86 F.2d 730 (2nd Cir.1936), cert. denied, 300 U.S. 665, 57 S.Ct. 509, 81 L.Ed. 873 (1937). That case arose when a drunken boatswain boarded his ship and punched a sailor who was asleep and not required to report for his watch duty for another half hour. Id. at 731. As the boatswain inflicted the blow, he said, "`Get up, you big son of a bitch, and turn to.'" Ibid. He then fought with the sailor inflicting further injuries. Ibid. Reversing a judgment dismissing the complaint at the end of the plaintiff's case, Judge Learned Hand wrote that
motives may be mixed; men may vent their spleen upon others and yet mean to further their master's business; that meaning, that intention is the test. If he really meant to rouse the plaintiff and send him upon duty, if he really meant to act as boatswain and for the ship, however imbecile his conduct it was his master's.
[Id. at 731-32.]
Since the boatswain not only said to get up but also told the sailor to "`turn to,'" Judge Hand was satisfied that a jury could find that the boatswain's order was intended to get the sailor to report for duty and that "he meant to act for the ship, and not *281 alone to satisfy his vindictive passions." Id. at 732.
Some courts have gone further in finding respondeat superior liability in circumstances similar to the ones at hand. For example, in Rodebush v. Oklahoma Nursing Homes, Ltd., 867 P.2d 1241 (Okla. 1993), the court considered the liability of a nursing home when a nurse's aide slapped an Alzheimer's patient in the face while bathing him in accordance with her assigned duties. Id. at 1243. A jury awarded plaintiff $50,000 in compensatory damages and $1.2 million in punitive damages. The court affirmed. After taking note of the general rule against an employer's liability to a third person assaulted by an employee, the court said that the general rule did not apply
when the act is one which is "fairly and naturally incident to the business", and is done "while the servant was engaged upon the master's business and be done, although mistakenly or ill advisedly, with a view to further the master's interest, or from some impulse of emotion which naturally grew out of or was incident to the attempt to perform the master's business."
[Id. at 1245 (emphasis added) (citations omitted).]
Allowing liability for impulsive conduct arising out of and during a time when, in general, the employee is carrying out assigned tasks for the employer, even when the impulsive act has not been done with an intent to further the master's interest, is also the law in California. Lisa M. v. Henry Mayo Newhall Mem'l Hosp., 12 Cal.4th 291, 48 Cal.Rptr.2d 510, 907 P.2d 358, 360-63 (1995). However, the California court recognized that the motive test is still the majority rule. Id. at 361.
At least one case has gone so far as to reject motive to serve the employer as a basis for liability in a school setting when the employee committed an assault on a student. Tall ex rel. Tall v. Bd. of Sch. Comm'rs, 120 Md.App. 236, 706 A.2d 659, 667-71 (Ct.Spec.App.1998). The court held that a public school could not be liable when a teacher used a ruler on a Down's syndrome student to discipline him for urinating in his pants. Id. at 661, 671. In the court's view that conduct could not "be considered in furtherance of the Board's objective of educating disabled children, particularly when, as here, both State and local law forbid the use of corporal punishment for discipline purposes." Id. at 671.
Despite the varying approaches taken by the courts of other jurisdictions to the problem at hand, we think it is clear that our Supreme Court has not abandoned the Gibson rule that to be within the scope of employment, an employee's action must be intended, at least in part, to serve the employer, and that if so intended, the employer is liable. See also Di Cosala v. Kay, 91 N.J. 159, 169, 450 A.2d 508 (1982).
We acknowledge that on at least two occasions, the Appellate Division has assumed that to be within the scope of employment, the conduct of the employee cannot be unexpectable from the employer's point of view. Mason v. Sportsman's Pub, 305 N.J.Super. 482, 499, 702 A.2d 1301 (App.Div.1997); Schisano v. Brickseal Refractory Co., 62 N.J.Super. 269, 275-76, 162 A.2d 904 (App.Div.), aff'd, 33 N.J. 323, 164 A.2d 602 (1960). But that requirement appears inconsistent with the Gibson rule, which has never been expressly rejected by our Supreme Court, that the employer is liable even if the employee's conduct is "imbecilic." Gibson, supra, 23 N.J. at 158, 128 A.2d 480. For surely no employer would expect such conduct from an employee.
*282 We see no basis for applying section 2(d) of the Restatement to this case. That section, in its only conceivably pertinent part, imposes liability for torts committed outside the scope of employment when the employee "was aided in accomplishing the tort by the existence of the agency relation." Restatement, supra, § 219(2)(d). In Lehmann, supra, 132 N.J. at 620, 626 A.2d 445, the Court said there would be employer liability for creation of a hostile work environment under this section "if an employer delegates the authority to control the work environment to a supervisor and that supervisor abuses that delegated authority." We need not explore other possible meanings of this section since we are satisfied that it would be inappropriate to apply it to the conduct of a low-level employee in the instant setting. We reach that conclusion because such an application would result in strict liability, which is inconsistent with the Court's implicit rejection of strict liability in Hardwicke.
Although we reject the imposition of any form of strict liability in this context, we are satisfied that plaintiffs are entitled to pursue their common-law claims under the rule laid down in Gibson. A jury might find that McClain assaulted Davis solely because of a preexisting personal grievance arising out of his prior assaults on her, or because she was angry about her boyfriend's death, either of which would free Devereux of liability. But a jury could also find that McClain's motives were at least mixed. When she went to get Davis out of bed, she was performing an assigned task. Her responsibilities included maintaining control of his behavior so that his tendency toward outbursts of violence did not cause harm to her or others. If avoidance of such an outburst to serve her employer was her intent, at least in part, her employer is liable under Gibson. Of course, her behavior was seriously reprehensible, but it was not substantially worse than the employee behavior in either Gibson (repeatedly striking a man in the head with a lantern) or Nelson, the main case on which Gibson relied, which involved a sudden punching followed by a severe beating.

III
We reject plaintiffs' claim that they are entitled to punitive damages against Devereux. Under the applicable statute, N.J.S.A. 2A:15-5.9 to -5.17, punitive damages may only be awarded on "clear and convincing evidence, that the harm suffered was the result of the defendant[s'] acts or omissions, [which] were actuated by actual malice or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions." N.J.S.A. 2A:15-5.12. Furthermore, punitive damages are only applicable in vicarious liability cases when there has been "`actual participation by upper management or willful indifference.'" Cavuoti v. N.J. Transit Corp., 161 N.J. 107, 117, 735 A.2d 548 (1999) (quoting Lehmann, supra, 132 N.J. at 625, 626 A.2d 445) (emphasis in the original). Since plaintiffs have offered no evidence satisfying the requisite elements of the statute or the relevant case law, the trial court correctly dismissed this claim.

IV
Finally, plaintiffs contend the trial court erred when it agreed to Devereux's request for reconsideration of that portion of its initial summary judgment decision permitting plaintiffs to proceed on the theory of non-delegable duty. We are obliged to uphold a trial court's decision to reconsider its decision unless there has been an abuse of discretion. Marinelli v. Mitts & Merrill, 303 N.J.Super. 61, 77, 696 A.2d 55 (App.Div.1997). Here, the trial court *283 granted reconsideration because it doubted with good reason the propriety of its creation of a new cause of action at the trial level. See, e.g., Proske v. St. Barnabas Med. Ctr., 313 N.J.Super. 311, 316, 712 A.2d 1207 (App.Div.1998), certif. denied, 158 N.J. 685, 731 A.2d 45 (1999). In these circumstances, reconsideration was unquestionably warranted.
Affirmed in part; reversed in part; and remanded for further proceedings not inconsistent with this opinion.
NOTES
[1] Because the issues were decided on summary judgment, we are obliged to consider the facts and reasonable inferences in a manner favoring the plaintiffs, since they were the non-moving parties. Strawn v. Canuso, 140 N.J. 43, 48, 657 A.2d 420 (1995).