**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2923-15T3

DENTAL HEALTH ASSOCIATES, P.A.,

    Plaintiff-Appellant,

v.

HORIZON BLUE CROSS BLUE SHIELD
OF NEW JERSEY; HORIZON NJ HEALTH;
HORIZON HEALTHCARE DENTAL, INC.;
HORIZON HEALTHCARE OF NEW JERSEY,
INC.; and GEORGE H. MCMURRAY, DDS,
PRESIDENT AND CEO OF HORIZON
HEALTHCARE OF NEW JERSEY, INC.,

    Defendants-Respondents.

_____

Argued July 11, 2017 — Decided October 19, 2017

Before Judges Nugent and Accurso.

On appeal from Superior Court of New Jersey,
Law Division, Essex County, Docket No. L-7842-
11.

Harry Jay Levin argued the cause for appellant
(Levin Cyphers, attorneys; Mr. Levin, Colleen
Flynn Cyphers, and Ronald J. Bakay, on the
briefs).

Edward S. Wardell argued the cause for
respondent (Connell Foley, LLP, attorneys;
Christine S. Orlando, on the brief).

PER CURIAM

Plaintiff, Dental Health Associates, P.A., appeals from an October 23, 2015 summary judgment order dismissing its complaint with prejudice and a February 5, 2016 order denying its motion for reconsideration. In response to defendants' summary judgment motion, plaintiff could establish no material facts to support the causes of action it pleaded in its complaint; and on its motion for reconsideration, plaintiff could produce no evidence that was new or previously unavailable. Defendants were therefore entitled to both summary judgment and the denial of plaintiff's motion for reconsideration. We affirm both orders.

Defendants (collectively "Horizon") administer health services programs.[1] Commencing in approximately 1996, certain Horizon entities and the Department of Human Services (DHS) were

_____

[1] Defendant Horizon Blue Cross Blue Shield of New Jersey is a not-for-profit health service corporation organized under the New Jersey Health Service Corporations Act, N.J.S.A. 17:48E-1 to -68. Horizon Health Care Dental, Inc., provides managed dental insurance plans for individuals and groups in the State. Horizon Health Care of New Jersey, Inc., is a New Jersey health maintenance organization, which contracts with the Department of Human Services to provide health and dental services to eligible Medicaid and New Jersey FamilyCare program participants. George H. McMurray, DDS, was its CEO. Horizon NJ Health, a New Jersey partnership, was an authorized agent of Horizon Health Care of New Jersey, Inc. Horizon NJ Health was dissolved in 2015. The administrative services for the Medicaid Managed Care Program once provided by Horizon NJ Health are provided by Horizon Health Care of New Jersey, Inc., d/b/a Horizon NJ Health. Plaintiff does not distinguish the entities for purposes of its liability theories.

parties to a "Contract To Provide Services" (the Contract). The Contract designated DHS as:

> [T]the state agency designated to administer the Medicaid program under Title XIX of the Social Security Act, 42 U.S.C. 1396 et seq. pursuant to the New Jersey Medical Assistance Act, N.J.S.A. 30:4D-1 et seq. and the Children's Health Insurance Program (CHIP) under Title XXI of the Social Security Act, 42 U.S.C. 1397aa et seq., pursuant to the Children's Health Care Coverage Act, P.L. 1997, c. 272 (also known as "NJ KidCare"), pursuant to Family Care Health Coverage Act, P.L. 2005, c. 156 (also known as "NJ FamilyCare") . . . .

Under the Contract, the designated Horizon entities are obligated to "provide or arrange to have provided comprehensive, preventive, and diagnostic and therapeutic, health care services" to enrollees who are eligible through Title V, Title XIX or the NJ FamilyCare program. This obligation is expressly made "subject to any limitations and/or excluded services as specified in this Article." In addition, the Contract requires the Horizon signatories to "have in place a formal grievance/appeal process which network providers and non-participating providers can use to complain in writing." As of September 1, 2007, Horizon had in place for "Horizon Blue Cross Blue Shield Dental Programs" a policy and procedure which made available to all participating and non-participating providers of dental services an appeal process for certain Horizon determinations.

3

Plaintiff provides dental services in offices throughout the State. The majority of plaintiff's patients are persons enrolled in Medicaid and the New Jersey FamilyCare Program. Since 2002, Horizon and plaintiff, through its principal, have been parties to an "Agreement with [a] Participating Dentist."[2] The Participating Dentist Agreement, which has twice been amended, requires plaintiff to "provide Eligible Dental Services to Covered Patients."

The term "covered patient" is defined as "a person entitled to Eligible Dental Services under any contract which [Horizon Blue Cross Blue Shield of New Jersey, Inc. (HBCBSNJ)] underwrite[s] or administer[s], wholly or in participation with others." The term "Eligible Dental Services" is defined as "a dental service which a Covered Patient is entitled to receive pursuant to a HBCBSNJ health or dental insurance contract, subscription certificate, or benefit design program being administered by HBCBSNJ or Horizon Healthcare Dental Services, Inc." In 2007 and 2010, the parties entered into amendments to the Participating Dentist Agreement.

In 2010, as part of a budget initiative, the State became

---

[2] This Agreement's signature line appears below printed form language, "Accepted and agreed: Horizon Healthcare Dental Services, Inc." The copy in the appellate record is unsigned by any officer on behalf of this entity, but contains the signature of Clifford Lisman.

more restrictive with respect to its programs' eligible orthodontic services for children. The State limited such services to those medically necessary, and restricted medical necessity to "cases involving birth defects, facial deformities causing functional difficulties in speech and mastication, and trauma." According to a June 15, 2010 email from DHS to HBCBSNJ's Dental Director, <u>N.J.A.C.</u> 10:56 would be modified in 2011 when it was due for re-adoption. "In the interim, a Newsletter [would] be issued documenting the changes once they are final."

On January 18, 2011, DHS informed Horizon of "the State Fiscal Year (SFY) 2011 Appropriations Act (Act) includ[ing] an initiative to narrow the scope in which orthodontia is a covered service for children." The letter quoted the Act:

> Notwithstanding the provisions of any law or regulation to the contrary, of the amounts hereinabove appropriated in Managed Care Initiative, Payments for Medical Assistance Recipients — Dental Services, and NJ FamilyCare — Affordable and Accessible Health Coverage Benefits, no payment shall be expended on orthodontic services for children except in cases where medical necessity can be proven, such as cases involving birth defects, facial deformities causing functional difficulties in speech and mastication, and trauma.

The letter emphasized that orthodontia should be provided only in exceptional situations. Following the 2010 budget

initiative, there was a decrease in all Medicaid claims for orthodontia, including those submitted by plaintiff.

In 2012, the State broadened the criteria for eligible orthodontics under the Medicaid Managed Care Program. The State acknowledges "there was a two year period from July 2010 through July 2012 when 'it really wasn't clear what was required for orthodontic evaluation.'"

The State issued a newsletter in July 2012 explaining that it would broaden reimbursements for orthodontics. At the same time, the State implemented a change in its contract. At that time, the State required each provider of services under the Medicaid Managed Care Program, including Horizon, to submit a Corrective Action Plan outlining actions they would take to comply with the State's July 2012 directive for orthodontic coverage. Horizon submitted a Corrective Action Plan and reimbursed plaintiff for work-ups that were previously denied from July 2010.

Meanwhile, in September 2011, plaintiff filed its complaint. The "Statement of Facts" section of the complaint is divided into three major subsections. The first is entitled "Denial of Orthodontic Services and Diagnostic Materials." After identifying the parties, the complaint recites the State's reduction of payments "so as to no longer require coverage of orthodontic procedures" in July 2010. The complaint cites the State's August

1, 2010 newsletter clarifying that certain orthodontic procedures were required to be covered by HMOs. The complaint further asserts, "under Medicaid's Early and Periodic Screening, Diagnostic & Treatment (EPSDT) service, orthodontic procedures and treatment that are medically necessary must be covered pursuant to Federal mandate."

The second subsection of the complaint's factual allegations is entitled "Mishandling of Frequency Limitations to New Jersey State Medicaid and FamilyCare Recipients." According to a certification submitted by HBCBSNJ's dental director, "a 'frequency limitation' . . . is a limit on the number of times a member can receive certain services (such as routine cleanings) and have them covered during a certain time period." The complaint alleges Horizon refused to comply with administrative regulations and "routinely denied [plaintiff] reimbursement for services provided to Medicaid or FamilyCare patients that were within the State listed frequency limitation and should [have been] covered." The complaint further alleges Horizon had created arbitrary frequency limitations on certain procedures.

The third subsection of the complaint's factual statements is entitled "Bad Faith Conduct of Horizon." This subsection alleges Horizon failed to pay the contracted fee for certain procedures and instead routinely downgraded payment; failed to pay

the proper contract fee for one of plaintiff's offices during its initial months of operation; improperly denied root canal treatment procedures and wrongly advised patients such procedures were denied due to poor prognosis; inappropriately denied approval and/or payment for impacted third molars that were medically necessary; implemented onerous claims appeals process designed to deny payment to providers and medically necessary treatment to members; periodically failed to maintain accurate eligibility files and other systems necessary to adequately and properly adjudicate claims; failed to send patients accurate information on Explanation of Benefit forms; failed to pay adequate fees and routinely paid higher fees to practices that Horizon considered as providing a lower quality in care; used abusive practices to deny access to care for the underserved; and mishandled Federal and State dollars for its own financial gains.

Based on these facts, plaintiff asserted causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, and interference with prospective economic advantage. To support its damage claim, plaintiff submitted an expert report from a firm with "extensive expertise in the area of business valuation, with over forty years of combined experience in the field." The report's author concluded plaintiff sustained losses of $2,765,579.

Following discovery, Horizon moved for summary judgment. During oral argument on Horizon's summary judgment motion, plaintiff conceded it had no outstanding claims with Horizon for services rendered.

> [The Court]: Okay. So there's no issue that — there were no claims that were filed that were denied that were part of this lawsuit?

> [Plaintiff's Attorney]: I do not have a specific claim or claims where I can say they were submitted and they were denied.

Plaintiff also conceded its expert had no opinion on the "issue of frequency," nor did the expert have any evidence concerning the allegations that Horizon's reimbursement rates were disparate depending upon socio-economic classifications. Although not entirely clear, it appears plaintiff argued on the summary judgment motion that Horizon should be held accountable for the State's budgeting decisions in 2011 and 2012 to restrict reimbursements for certain dental services.

Judge Stephanie A. Mitterhoff granted Horizon's summary judgment motion and explained her reasons in a written opinion accompanying the October 23, 2015 order entering summary judgment. After reviewing plaintiff's three-count complaint, Judge Mitterhoff noted that as of "the filing of Horizon's summary judgment motion . . . [p]laintiff failed to identify a single claim that was denied." Judge Mitterhoff also noted Horizon's

argument that plaintiff had failed to exhaust its administrative remedies, but deemed the argument moot once plaintiff conceded at oral argument that Horizon had denied none of plaintiff's claims.

The judge next noted that plaintiff "initially claimed damages based on improper denials based on frequency limitations, and disparate and discriminatory reimbursement rates paid to providers such as [p]laintiff providing services to patients in urban areas as compared to the rates for the same services paid to providers who practice in more affluent areas." Judge Mitterhoff pointed out, however, that plaintiff had not provided its expert with any "data that would enable him to opine on the value of either of those claims." Judge Mitterhoff also noted plaintiff's concession at oral argument "that the frequency limitation and discrimination claims are no longer being pursued in this case." Thus, as the judge explained, plaintiff's remaining argument was "that had the eligibility criteria for orthodontic services been the same during the time period of 2010 to 2012 as they had been prior to 2010 and after 2012, [plaintiff] would have been able to generate more business and thus would have earned more money."

Judge Mitterhoff determined Horizon could not be held liable for losses plaintiff sustained as the result of the State's limiting coverage for Medicaid patients pursuant to a budget

initiative. The parties did not dispute that their contract was subject to the contract between Horizon and DHS. As Horizon was bound by its contract with DHS concerning what procedures were "covered services," plaintiff could not prevail on its claim that Horizon breached its contractual obligations.

For similar reasons, Judge Mitterhoff determined plaintiff had not demonstrated a material factual dispute as to whether Horizon had breached the implied covenant of good faith and fair dealing by acting "arbitrar[ily], unreasonably, or capriciously, with the objective of preventing the other party from receiving its reasonably expected fruits under the contract." The judge further determined plaintiff could not prevail on its tortious interference claim because plaintiff's alleged loss during the relevant time frame resulted from the State's budget initiative rather than intentional or malicious interference on the part of Horizon.

Plaintiff moved for reconsideration. Contrary to its representation during oral argument on Horizon's summary judgment motion, plaintiff claimed it "did in fact submit claims, that otherwise should have been honored, but were rejected." In support of that proposition, plaintiff submitted one claim, which plaintiff asserted Horizon had rejected. Plaintiff also claimed New Jersey's budget initiative violated federal law, though it

cited no authority for that proposition. In its remaining arguments, plaintiff mostly rehashed the arguments it had made when opposing Horizon's summary judgment motion.

Judge Mitterhoff denied the motion for reconsideration. She noted plaintiff had produced no evidence that was unavailable when defendants filed their summary judgment motion. Moreover, she noted plaintiff had failed to exhaust its administrative remedies. Lastly, the judge reiterated her reasons for granting summary judgment, which applied to the arguments plaintiff reiterated on its motion for reconsideration.

On appeal, plaintiff contends the trial court erroneously denied its motion for reconsideration. It cites the single denied claim it submitted in support of its motion and makes a general statement that Horizon was "rejecting any and all claims for orthodontia, in a wholesale fashion, whether or not there was medical necessity." Plaintiff also relies on the certification of its principal, "explaining that [plaintiff] did submit claims for pre-authorization, but ceased doing so as all claims were being denied and continuing to submit claims was futile."

Additionally, plaintiff argues the trial court erred in granting summary judgment to Horizon. Plaintiff contends there were material issues of fact in dispute that should have precluded the grant of summary judgment. Plaintiff argues the trial court's

12

decision "ignores or discredits the fact that the State's decision to cut funding to [Horizon] for orthodontic procedures does not, in turn give [Horizon] the right to deny medically necessary orthodontia claims submitted for pre-authorization by [plaintiff] which is in violation of the contract between [plaintiff] and [Horizon]."

Lastly, plaintiff argues the trial court erred in finding that it did not exhaust its administrative remedies, because the situation falls under an exception to the exhaustion doctrine.

Appellate courts "review[] an order granting summary judgment in accordance with the same standard as the motion judge." Bhagat v. Bhagat, 217 N.J. 22, 38 (2014) (citations omitted). We "review the competent evidential materials submitted by the parties to identify whether there are genuine issues of material fact and, if not, whether the moving party is entitled to summary judgment as a matter of law." Ibid. (citing Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)); accord R. 4:46-2(c). A trial court's determination that a party is entitled to summary judgment as a matter of law is not entitled to any "special deference," and is subject to de novo review. Cypress Point Condo. Ass'n v. Adria Towers, L.L.C., 226 N.J. 403, 415 (2016) (citation omitted).

We review a trial court's denial of a motion for reconsideration under an abuse of discretion standard. Davis v. Devereux Found., 414 N.J. Super. 1, 17 (App. Div. 2010) (citing Marinelli v. Mitts & Merrill, 303 N.J. Super. 61, 77 (App. Div. 1997)), aff'd in part and rev'd in part on other grounds, 209 N.J. 269 (2012).

Having considered plaintiff's arguments in light of the record and the applicable standards of review, we affirm, substantially for the reasons expressed by Judge Mitterhoff in her written opinions granting summary judgment to defendants and denying plaintiff's motion for reconsideration. Plaintiff's arguments are without sufficient merit to warrant further consideration in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2923-15T3